**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| REPUBLIC-VANGUARD INSURANCE COMPANY, | ) |
| | ) |
| 3260 N Hayden Road #210, Scottsdale, AZ 85251 | ) |
| | ) |
| Plaintiff, | )  Case No. _____ |
| | ) |
| v. | ) |
| | ) |
| PACEM DEFENSE, LLC, | ) |
| | ) |
| 2941 Fairview Park Dr, Suite 350, Falls Church, VA 22042 | ) |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Republic-Vanguard Insurance Company, by and through its undersigned counsel, Cozen O'Connor, brings this Complaint for Declaratory Judgment against PACEM Defense, LLC, and in support thereof states as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff, Republic-Vanguard Insurance Company ("RVIC"), seeks a declaration that a Commercial Policy ("Policy") it issued to PACEM Solution International LLC, under which PACEM Defense, LLC ("PACEM") qualifies as an **Insured**,[1] does not afford defense or indemnification coverage regarding a lawsuit captioned *DSS A.S. v. PACEM Defense LLC, d/b/a PACEM Defense/ALS*, Case No.1:24-cv-1331, filed in the U.S. District Court for the Eastern District of Virginia ("Underlying Lawsuit") on or about July 31, 2024.

---

[1] Words in bold type are defined terms in the Policy.

2.      After receiving notice of a complaint ("Complaint") filed in the Underlying Lawsuit, RVIC issued a coverage denial letter to PACEM on August 12, 2024. PACEM did not respond.

3.      On November 8, 2024, the court in the Underlying Lawsuit dismissed several causes of action in the Complaint without prejudice and ordered that DSS A.S. ("DSS"), the plaintiff in the Underlying Lawsuit, could file an amended pleading.

4.      On December 13, 2024, an amended complaint ("Amended Complaint") was filed in the Underlying Lawsuit. PACEM did not provide notice of the Amended Complaint to RVIC at that time.

5.      PACEM did not provide RVIC notice of the Amended Complaint until October 20, 2025, by which point the Underlying Lawsuit had been dismissed with prejudice for more than two months pursuant to a consent judgment ("Consent Judgment").

6.       PACEM signed the Consent Judgment on August 15, 2025; and, on August 19, 2025, the court in the Underlying Lawsuit signed off on it.

7.      The Consent Judgment orders PACEM to pay $8 million to DSS.

8.      PACEM did not provide notice to RVIC regarding the Consent Judgment until October 20, 2025.

9.      Under the Policy, RVIC is not obligated to provide defense coverage to PACEM regarding the Complaint based on a Contract Procurement/Provision Exclusion; Contractual Liability Exclusion; and Tortious Interference Exclusion.

10.      The Contract Procurement/Provision Exclusion states that RVIC shall not be liable to make any payments for **Loss** in connection with any **Claim** made against any **Insured** alleging,

arising out of, based upon or attributable to any **Wrongful Act** committed, or allegedly committed in the request for a proposal for, or the procurement or fulfillment of any contract.

11.     As explained below, DSS's allegations in the Complaint arise out of, are based upon and are attributable to PACEM's alleged failure to deliver grenades pursuant to an agreement with DSS, as well as PACEM's alleged misrepresentations in connection with the procurement of the agreement with DSS. Accordingly, the Contract Procurement/Provision Exclusion bars coverage for the Complaint in its entirety.

12.     In addition, the Policy is subject to a Contractual Liability Exclusion, which states that RVIC shall not be liable to make any payments for **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the **Company** or any other **Insured** under any express contract or agreement, including but not limited to any employment or shareholder agreement.

13.     As explained below, the Complaint alleges breach of contract and several contract-based causes of action. Accordingly, the Contractual Liability Exclusion bars coverage for the Complaint in its entirety.

14.     Furthermore, the Policy is subject to a Tortious Interference Exclusion, which states that RVIC shall not be liable to make any payments for **Loss** in connection with any **Claim** made against any **Insured** for any actual or alleged violation of any law, whether statutory, regulatory or common law, as respects the following activities: anti-trust, business competition, unfair trade practices or tortious interference in another's business or contractual relationships.

15.     The Complaint alleges that PACEM attempted to tortiously interfere with DSS's contractual relationship with the Ukrainian National Police. Accordingly, the Tortious Interference Exclusion bars coverage.

LEGAL\81626450\2

16.     With respect to the Amended Complaint filed in the Underlying Lawsuit, RVIC is not obligated to provide defense or indemnification coverage to PACEM.

17.     PACEM provided late notice of the Amended Complaint to RVIC, thus violating the Policy's notice provisions.

18.     Moreover, because the Policy's notice provisions are strictly construed, and because the Consent Judgment was entered in connection with the Amended Complaint, coverage is unavailable for the Consent Judgment.

19.     Even if the Court were to consider the Amended Complaint, which it should not because it was never properly noticed, the Contract Procurement/Provision Exclusion and Contractual Liability Exclusion  nevertheless bar coverage in their entirety.[2]

20.     Finally, even if PACEM provided proper notice of the Amended Complaint (it did not), and even if the above-mentioned exclusions did not bar coverage (they do), PACEM did not seek RVIC's consent to enter into the Consent Judgment. Accordingly, the Policy's consent-to-settle provisions foreclose coverage for the Consent Judgment.

21.     For these reasons, which are explained in greater detail below, RVIC is entitled to a declaration that it does not owe defense or indemnity coverage under the Policy for the Underlying Lawsuit or the Consent Judgment.

### THE PARTIES

22.     RVIC is an Arizona corporation engaged in the insurance business with its principal place of business located in New York City, New York and is, thus, a citizen of Arizona and New York. RVIC is authorized to transact business and has transacted business in Virginia.

---

[2] The Tortious Interference Exclusion is inapplicable to the Amended Complaint only inasmuch as it drops the allegation that PACEM attempted to tortiously interfere with DSS's contractual relationship with the Ukrainian National Police.

23.     Upon information and belief, PACEM is a limited liability company organized and existing under the laws of Virginia with its headquarters located in Falls Church, Virginia. Upon information and belief, PACEM comprises one member, PACEM Defence Holdings, Inc., a Delaware corporation with its principal place of business located in Virginia. PACEM is thus a citizen of Delaware and Virginia.

## JURISDICTION AND VENUE

24.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

25.     Personal jurisdiction exists, and venue is proper in the Eastern District of Virginia under 28 U.S.C. § 1391, because, *inter alia*, PACEM is a resident and citizen of Falls Church, Virginia, which is within this District; the Policy at issue, under which PACEM qualifies as an **Insured**, was issued to PACEM Solution International LLC at an address within this District: 2941 Fairview Park Drive, Suite 350, Falls Church, VA 22042; and the Underlying Lawsuit was filed in this District.

## FACTUAL BACKGROUND

I.     **The Underlying Lawsuit**

     A.     **The Complaint**

26.     DSS filed the Complaint against PACEM on July 31, 2024. A copy of the Complaint is annexed hereto as **Exhibit 1**.

27.     DSS alleges that its claims arise from PACEM's alleged breach of a Sale of Goods & Purchase Agreement, No.: DSS23-004, dated December 18, 2023 ("Agreement"); PACEM's alleged fraudulent inducement of the Agreement; PACEM's alleged tortious interference with

DSS's contractual arrangements and business expectancy; PACEM's alleged unjust enrichment to the detriment of DSS; and PACEM's alleged failure to act in good faith.

28.     The Complaint alleges that Ukraine has needed to defend itself against Russia, as a result of Russia's invasion in early 2022.

29.     The Complaint alleges that Ukraine has needed weapons and ammunition from foreign entities like DSS.

30.     Allegedly, a Ukrainian customer of DSS (Ukrinmash) asked DSS to supply small arms to the Ukraine National Police to be used to support warfighting efforts.

31.     The Complaint alleges that DSS and PACEM thus executed the Agreement, which called for PACEM to manufacture and export 40-millimeter grenades (the "Grenades").

32.     PACEM allegedly received millions of dollars in a deposit for the Agreement.

33.     The Agreement required PACEM to deliver the Grenades after approval of export.

34.     Allegedly, PACEM received export approval on January 22, 2024.

35.     Notwithstanding this, the Complaint alleges that PACEM failed to deliver the Grenades and refused to provide information regarding the status of the Grenades or an accounting of the funds paid.

36.     Also, allegedly in March 2024, PACEM inadvertently sent DSS a document demonstrating that it had delivered a substantial quantity of the same Grenades to another entity for a price higher than the price contracted for in the Agreement with DSS.

37.     DSS alleges that PACEM provided the Grenades to another entity for a higher profit, instead of delivering them to DSS as required by the Agreement.

38.    DSS alleges that as a result of PACEM's conduct, its Ukrainian customer terminated the purchase of the Grenades and demanded that DSS pay substantial penalties, causing DSS to suffer harm.

39.    The Complaint asserts the following causes of action against PACEM: (1) Fraud in the Inducement; (2) Breach of Contract; (3) Accounting; (4) Tortious Interference; and (5) Unjust Enrichment.

**B.    Amended Complaint**

40.    DSS filed the Amended Complaint against PACEM on December 13, 2024. A copy of the Amended Complaint is annexed hereto as **Exhibit 2**.

41.    The Amended Complaint alleges that per the Agreement, PACEM agreed to manufacture and export the Grenades.

42.    However, the Amended Complaint alleges that PACEM never intended to perform pursuant to the Agreement.

43.    The Amended Complaint alleges that PACEM was facing significant financial trouble, and it sought to use the funds received for the Grenades to facilitate its performance under a separate, more lucrative contract with a different customer.

44.    The Amended Complaint alleges that before the Agreement was executed, PACEM made numerous misrepresentations to DSS regarding the availability of the Grenades, as well as PACEM's intent to perform under the Agreement.

45.    The Amended Complaint alleges that these misrepresentations fraudulently induced DSS to execute the Agreement and provide advance payment to PACEM.

46.    According to the Amended Complaint, PACEM never delivered the Grenades as required by the Agreement.

47.    The Amended Complaint also alleges that PACEM never provided basic information regarding the status of the Grenades or what happened to the funds deposited.

48.    The Amended Complaint also alleges that PACEM improperly retained the amounts DSS advanced for the manufacture and delivery of the Grenades.

49.    The Amended Complaint reiterates and repeats many of the same allegations as set forth in the Complaint.

50.    The Amended Complaint asserts the following causes of action: (1) Fraud in the Inducement; (2) Breach of Contract; (3) Specific Performance; and (4) Unjust Enrichment.

### C.    The Consent Judgment

51.    On August 15, 2025, DSS and PACEM signed and filed with the Court a Proposed Consent Judgment. A copy is annexed hereto as **Exhibit 3**.

52.    Among other things, the Proposed Consent Judgment orders, adjudges, and decrees that PACEM will pay $8 million to DSS pursuant to a stipulated schedule.

53.    On August 19, 2025, the Court entered the Consent Judgment. A copy of the signed Consent Judgment Order is annexed hereto as **Exhibit 4**.

54.    Per the Consent Judgment Order, the Underlying Lawsuit was dismissed with prejudice.

### THE POLICY

55.    RVIC issued Commercial Policy No. RVA1001589 00 to "PACEM Solution International LLC" for the period of December 21, 2023 to December 21, 2024 ("Policy"). A copy of the Policy is annexed hereto as **Exhibit 5**.

56.     The Policy includes a Directors and Officers and Private Company Liability **Coverage Element** ("D&O Part"), which provides $2 million in liability limits subject to a $250,000 Retention (inclusive of **Defense Costs**).

57.     The Policy does not impose a duty to defend upon RVIC.

58.     Insuring Agreement C of the Policy, entitled "Company Coverage," provides as follows: "[t]he **Insurer** shall pay **Loss** of a **Company** arising from a **Claim** first made against a **Company** during the **Policy Period** or the Extended Reporting Period if applicable for any actual or alleged **Wrongful Act** of a **Company**."

59.     A **Claim** under the Policy means, in relevant part, a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by service of a complaint or similar pleading.

60.     "**Defense Costs** means reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond), resulting solely from the investigation, adjustment, defense and appeal of a **Claim** against an **Insured**, but excluding compensation of any **Individual Insured**. **Defense Costs** shall not include any fees, costs or expenses incurred prior to the time that a **Claim** is first made against an **Insured**."

61.     "**Company** means (i) the **Named Insured**; (ii) any **Subsidiary**; and (iii) the **Named Insured** or any **Subsidiary** as a debtor-in-possession under United States of America bankruptcy law or similar legal status under foreign law."

62.     "**Insured** means any 1. **Company**; . . . ."

63.    "**Loss** means (1) the amount that any **Insured** becomes legally obligated to pay in connection with any covered **Claim**, including, but not limited to: (i) judgments (including pre-judgment and post-judgment interest on any covered portion thereof) and settlements; and (ii) damages, including punitive or exemplary damages and the multiple portion of multiplied damages relating to punitive or exemplary damages. The enforceability of this subparagraph (ii) shall be governed by such applicable law that most favors coverage for such punitive, exemplary and multiple damages; (2) **Defense Costs**; . . . [.]"

64.    "**Loss** shall not include, other than **Defense Costs**: (1) any amount for which the **Insureds** are not financially liable or which are without legal recourse to the **Insureds**; (2) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed; . . . (5) the costs and expenses of complying with any injunctive relief or other form of nonmonetary relief."

65.    "**Wrongful Act** means . . . (2) any breach of duty, neglect, error, misstatement, misleading statement, omission, or act by a **Company**."

66.    Under the Policy, the **Insured** shall, as a condition precedent to the obligations of the **Insurer**, give notice to the **Insurer**, of any **Claim** made against an **Insured** as soon as practicable but no later than 60 days after the expiration date shown in Item 2 of the General Declarations.

67.    The expiration date shown in Item 2 of the General Declarations is December 21, 2024.

68.    Pursuant to the Contract Procurement/Provision Exclusion, RVIC is not liable to make any payments for **Loss** in connection with any **Claim** made against any **Insured** alleging,

arising out of, based upon or attributable to any **Wrongful Act** committed, or allegedly committed in the request for a proposal for, or the procurement or fulfillment of any contract.

69.    Pursuant to the Contractual Liability Exclusion, RVIC is not liable to make any payments for **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the **Company** or any other **Insured** under any express contract or agreement, including but not limited to any employment or shareholder agreement.

70.    Pursuant to the Tortious Interference Exclusion, RVIC is not liable to make any payments for **Loss** in connection with any **Claim** made against any **Insured** for any actual or alleged violation of any law, whether statutory, regulatory or common law, as respects the following activities: anti-trust, business competition, unfair trade practices or tortious interference in another's business or contractual relationships.

71.    The Policy states that the **Insured** shall not stipulate to any judgment without the prior written consent of RVIC.

72.    The Policy also states that if the **Insured** admits or assumes any liability in connection with any **Claim** without the consent of RVIC, then RVIC shall not have any obligation to pay **Loss** (which includes **Defense Costs**) with respect to such **Claim**.

73.    The Policy further states that only those stipulated judgments which have been consented to by RVIC shall be recoverable as **Loss** under the terms of the D&O Part.

## **THE PARTIES' COVERAGE DISPUTE**

74.    On August 1, 2024, RVIC received from the **Insured** notice regarding the Complaint filed in the Underlying Lawsuit.

75. On August 12, 2024, AmTrust North America ("AmTrust"), as the representative for RVIC, sent PACEM Solution International LLC, the named insured on the Policy, coverage correspondence regarding the Complaint filed in the Underlying Lawsuit.

76. AmTrust explained that although the Complaint was a **Claim** against an **Insured**, coverage was excluded in its entirety based on the Contract Procurement/Provision Exclusion.

77. In addition, AmTrust explained to PACEM that the Contractual Liability and Tortious Interference Exclusions also barred coverage for the Complaint.

78. Finally, AmTrust cited to other Policy provisions and generally reserved its rights under the Policy.

79. PACEM did not respond to AmTrust's August 12, 2024 correspondence until October 20, 2025.

80. Between August 12, 2024, and October 20, 2025, the Amended Complaint was filed, PACEM signed the Proposed Consent Judgment, and the Consent Judgment Order was signed and entered by the Court in the Underlying Lawsuit.

81. PACEM did not provide notice to AmTrust or RVIC of the Amended Complaint or Consent Judgment until more than ten months after the end of the **Policy Period**.

82. PACEM's October 20, 2025 letter to AmTrust enclosed several documents, including the Amended Complaint, and requested that AmTrust reconsider its coverage denial letter dated August 12, 2024, which addressed the Complaint filed in the Underlying Lawsuit.

83. PACEM's October 20, 2025 letter also enclosed the Consent Judgment Order.

84. PACEM's October 20, 2025 letter also argued that because the Amended Complaint included fraud-related allegations, coverage should be available under the Policy.

85. On October 28, 2025, AmTrust responded to PACEM's October 20, 2025 letter.

86.    AmTrust stood by the August 12, 2024 coverage denial, explaining that pursuant to the Contract Procurement/Provision Exclusion, and its broad lead-in language, coverage was unavailable for the Underlying Lawsuit in its entirety; and that the Contractual Liability and Tortious Interference Exclusions also barred coverage.

87.    AmTrust's correspondence also explained that the fraud-related allegations represented **Wrongful Acts** that fell squarely within the Contract Procurement/Provision Exclusion; and that the Contract Procurement/Provision and Contractual Liability Exclusions were both subject to broad lead-in language.

88.    AmTrust's correspondence also explained that PACEM did not provide proper notice of the Amended Complaint and did not receive consent to settle under the Policy, both of which foreclosed coverage for the Underlying Lawsuit and Consent Judgment.

## CASE & CONTROVERSY

89.    The Consent Judgment entered by the Court in the Underlying Lawsuit orders PACEM to pay $8 million to DSS, and PACEM has demanded RVIC to pay its $2 million Policy limits for the Consent Judgment, so this case involves damages in excess of $75,000.00.

90.    PACEM has made a claim for coverage under the Policy with respect to the Underlying Lawsuit and Consent Judgment.

91.    Coverage for the Underlying Lawsuit and Consent Judgment is barred by the terms, limitations, conditions, definitions, and exclusions of the Policy.

92.    RVIC believes and therefore avers that a *bona fide* case and controversy exists as between RVIC and PACEM regarding any claimed insuring obligations under the Policy, which is ripe for disposition.

## FIRST CAUSE OF ACTION[3]
### (The Contract Procurement/Provision Exclusion Bars Coverage for the Complaint)

93.     RVIC incorporates by reference Paragraphs 1 through 92 of this complaint as if set forth at length herein.

94.     RVIC is under no obligation to provide defense coverage to PACEM with respect to the Complaint in the Underlying Lawsuit pursuant to the express terms, conditions, and exclusions of the Policy.

95.     The Contract Procurement/Provision Exclusion states that RVIC shall not be liable to make any payments for **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon or attributable to any **Wrongful Act** committed, or allegedly committed in the request for a proposal for, or the procurement or fulfillment of any contract.

96.     The Complaint alleges, arises out of, is based upon and is attributable to **Wrongful Acts** committed, or allegedly committed in the request for a proposal for, or the procurement or fulfillment of any contract.

97.     DSS's allegations arise out of, are based upon and are attributable to PACEM's alleged failure to deliver Grenades pursuant to an agreement with DSS, as well as PACEM's alleged misrepresentations in connection with the procurement of the agreement with DSS.

98.     Accordingly, the Contract Procurement/Provision Exclusion bars coverage for the Complaint in its entirety.

99.     RVIC has complied with all terms and conditions under the Policy, or is excused from doing so based on PACEM's conduct.

---

[3] By listing any matter as a cause of action, RVIC does not assume the burden of proving any matter upon which PACEM bears the burden of proof under applicable law as an alleged **Insured**.

100.    RVIC is entitled to a declaration, pursuant to 28 U.S.C. § 2201, that it has no coverage obligations under the Policy with respect to the Complaint.

101.    There is no adequate remedy, other than that requested herein, by which this controversy may be resolved.

## SECOND CAUSE OF ACTION
### (The Contractual Liability Exclusion Bars Coverage for the Complaint)

102.    RVIC incorporates by reference Paragraphs 1 through 101 of this complaint as if set forth at length herein.

103.    RVIC is under no obligation to provide defense coverage to PACEM with respect to the Complaint in the Underlying Lawsuit pursuant to the express terms, conditions, and exclusions of the Policy.

104.    The Policy is subject to a Contractual Liability Exclusion, which states that RVIC shall not be liable to make any payments for **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the **Company** or any other **Insured** under any express contract or agreement, including but not limited to any employment or shareholder agreement.

105.    The Complaint alleges breach of contract and several contract-based causes of action against PACEM with respect to the Agreement.

106.    The Underlying Lawsuit thus alleges, arises out of, is based upon, and is attributable to any actual or alleged contractual liability of PACEM under an express contract or agreement.

107.    Accordingly, the Contract Liability Exclusion bars coverage for the Complaint.

108.    RVIC has complied with all terms and conditions under the Policy, or is excused from doing so based on PACEM's conduct.

109.    RVIC is entitled to a declaration, pursuant to 28 U.S.C. § 2201, that it has no coverage obligations under the Policy with respect to the Complaint.

110.    There is no adequate remedy, other than that requested herein, by which this controversy may be resolved.

### THIRD CAUSE OF ACTION
**(The Tortious Interference Exclusion Bars Coverage Under the Complaint)**

111.    RVIC incorporates by reference Paragraphs 1 through 110 of this complaint as if set forth at length herein.

112.    RVIC is under no obligation to provide coverage to PACEM with respect to the Complaint pursuant to the terms, conditions, and exclusions of the Policy.

113.    The Policy is subject to a Tortious Interference Exclusion, which states that RVIC shall not be liable to make any payments for **Loss** in connection with any **Claim** made against any **Insured** for any actual or alleged violation of any law, whether statutory, regulatory or common law, as respects the following activities: anti-trust, business competition, unfair trade practices or tortious interference in another's business or contractual relationships.

114.    The Complaint alleges that PACEM attempted to tortiously interfere with DSS's contractual relationship with the Ukrainian National Police.

115.    The Complaint is thus a **Claim** made against an **Insured** for any actual or alleged violation of common law regarding tortious interference in another's business or contractual relationships.

116.    Accordingly, the Tortious Interference Exclusion bars coverage for the Complaint.

117.    RVIC has complied with all terms and conditions under the Policy, or is excused from doing so based on PACEM's conduct.

118.    RVIC is entitled to a declaration, pursuant to 28 U.S.C. § 2201, that it has no coverage obligations under the Policy with respect to the Complaint.

119.    There is no adequate remedy, other than that requested herein, by which this controversy may be resolved.

## <u>FOURTH CAUSE OF ACTION</u>
### (PACEM's Late Notice of the Amended Complaint Forecloses Defense & Indemnification Coverage)

120.    RVIC incorporates by reference Paragraphs 1 through 119 of this complaint as if set forth at length herein.

121.    RVIC is under no obligation to provide defense or indemnification coverage to PACEM with respect to the Amended Complaint and Consent Judgment pursuant to the terms, conditions, and exclusions of the Policy.

122.    PACEM shall, as a condition precedent to the obligations of RVIC, give notice to RVIC of any **Claim** made against an **Insured** as soon as practicable but no later than 60 days after the expiration date shown in Item 2 of the General Declarations or its earlier cancellation or prior to the end of the Extended Reporting Period, if applicable.

123.    The expiration date shown in Item 2 of the General Declarations is December 21, 2024, which means that PACEM had until no later than 60 days after December 21, 2024 to provide RVIC notice of the Amended Complaint filed in the Underlying Lawsuit.

124.    The Amended Complaint was filed on December 13, 2024, which was within the December 21, 2023 – December 21, 2024 **Policy Period**.

125.    PACEM, however, did not provide RVIC notice of the Amended Complaint until October 20, 2025, by which point the Underlying Lawsuit had been dismissed with prejudice for more than two months.

17

126.    PACEM is in material breach of the Policy's notice provisions.

127.    Given that the Amended Complaint was filed on December 13, 2024, but PACEM did not provide notice until October 20, 2025—nearly a year later and after the Underlying Lawsuit had been dismissed with prejudice—PACEM's breach is without justification, and constitutes a substantial and material violation of the Policy's notice requirement.

128.    Because PACEM provided late notice of the Amended Complaint, the Policy does not provide any defense coverage and does not afford any indemnification coverage for the Consent Judgment that was entered in connection with the Amended Complaint.

129.    RVIC has complied with all terms and conditions under the Policy, or is excused from doing so based on PACEM's conduct.

130.    RVIC is entitled to a declaration, pursuant to 28 U.S.C. § 2201, that it has no coverage obligations under the Policy with respect to the Amended Complaint or Consent Judgment.

131.    There is no adequate remedy, other than that requested herein, by which this controversy may be resolved.

### FIFTH CAUSE OF ACTION
**(The Contract Procurement/Provision Exclusion & Contractual Liability Exclusion Bar Coverage For the Amended Complaint )**

132.    RVIC incorporates by reference Paragraphs 1 through 131 of this complaint as if set forth at length herein.

133.    RVIC is under no obligation to provide defense or indemnification coverage to PACEM with respect to the Amended Complaint and Consent Judgment pursuant to the terms, conditions, and exclusions of the Policy.

LEGAL\81626450\2

134.    Even if PACEM had provided proper notice of the Amended Complaint (it did not), the Contract Procurement/Provision Exclusion and Contractual Liability Exclusion both bar coverage for the Amended Complaint and Consent Judgment in their entirety.

135.    Specifically, the allegations in the Amended Complaint trigger the application of the Contract Procurement/Provision Exclusion, which bars coverage for the Amended Complaint and Consent Judgment in their entirety.

136.    In addition, the allegations in the Amended Complaint trigger the application of the Contractual Liability Exclusion, which bars coverage for the Amended Complaint and Consent Judgment in their entirety.

137.    RVIC has complied with all terms and conditions under the Policy, or is excused from doing so based on PACEM's conduct.

138.    RVIC is entitled to a declaration, pursuant to 28 U.S.C. § 2201, that it has no coverage obligations under the Policy with respect to the Amended Complaint or Consent Judgment.

139.    There is no adequate remedy, other than that requested herein, by which this controversy may be resolved

**SIXTH CAUSE OF ACTION**
**(The Policy's Consent-to-Settle Provision Forecloses Coverage for the Consent Judgment)**

140.    RVIC incorporates by reference Paragraphs 1 through 139 of this complaint as if set forth at length herein.

141.    RVIC is under no obligation to indemnify PACEM with respect to the Consent Judgment pursuant to the terms, conditions, and exclusions of the Policy.

142.    The Policy states that PACEM shall not stipulate to any judgment without the prior written consent of RVIC.

143.    The Policy also states that if PACEM admits or assumes any liability in connection with any **Claim** without the consent of RVIC, then RVIC shall not have any obligation to pay **Loss** with respect to such **Claim**.

144.    The Policy further states that only those stipulated judgments that have been consented to by RVIC shall be recoverable as **Loss** under the terms of the D&O Part.

145.    PACEM did not provide RVIC notice that an Amended Complaint was filed in the Underlying Lawsuit.

146.    PACEM signed the Proposed Consent Judgment on August 15, 2025.

147.    PACEM did not provide notice of the Proposed Consent Judgment to RVIC before PACEM signed it on August 15, 2025.

148.    The Proposed Consent Judgment orders PACEM to pay $8 million to DSS.

149.    PACEM did not receive RVIC's consent to assume the liability in the Proposed Consent Judgment.

150.    On August 19, 2025, the Court signed and entered the Consent Judgment.

151.    PACEM did not provide notice of the Consent Judgment Order when it was entered on August 19, 2025.

152.    PACEM did not provide RVIC notice of the Proposed Consent Judgment or the Consent Judgment Order until October 20, 2025, more than two months after the Court had entered the Consent Judgment Order and dismissed the Underlying Lawsuit with prejudice.

153.    Because PACEM has stipulated to a judgment without RVIC's prior written consent, and because PACEM assumed liability in connection with a **Claim** without RVIC's prior written consent, RVIC does not have any obligation to pay any **Loss** regarding the Consent Judgment.

154.     RVIC has complied with all terms and conditions under the Policy, or is excused from doing so based on PACEM's conduct.

155.     RVIC is entitled to a declaration, pursuant to 28 U.S.C. § 2201, that it has no coverage obligations under the Policy with respect to the Consent Judgment.

156.     There is no adequate remedy, other than that requested herein, by which this controversy may be resolved.

**WHEREFORE**, plaintiff Republic-Vanguard Insurance Company respectfully requests that this Honorable Court enter an Order:

(1)     Declaring that Republic-Vanguard Insurance Company owes no defense or indemnification obligations in connection with the lawsuit captioned *DSS A.S. v. PACEM Defense LLC, d/b/a PACEM Defense/ALS*, Case No.1:24-cv-1331, U.S. District Court, Eastern District of Virginia; and

(2)     A Judgment and/or Order for such other relief consistent with the claims and causes of action asserted in this complaint.

Date: December 1, 2025

Respectfully submitted,

*/s/ Chad E. Kurtz*
Chad E. Kurtz (VSB #88863)
COZEN O'CONNOR
2001 M Street NW, Suite 500
Washington, D.C. 20036
Telephone: (202) 463-2521
Facsimile: (202) 640-5939
ckurtz@cozen.com

Rafael Rivera, Jr. (To be admitted *Pro Hac Vice*)
COZEN O'CONNOR
3 WTC, 175 Greenwich Street, 55th Floor
New York, NY 10007
Telephone: (212) 453-3879
Facsimile: (646) 588-1372
rafaelrivera@cozen.com

Gary L. Gassman (To be admitted *Pro Hac Vice*)

COZEN O'CONNOR
123 North Wacker Drive, Suite 1800
Chicago, IL 60606
Telephone: (312) 382-3100
Facsimile: (312) 382-8910
ggassman@cozen.com
*Attorneys for Plaintiff Republic-Vanguard
Insurance Company*

22